UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JONATHAN GALEN MCPHERSON,

Petitioner,

v.

WARDEN,

Respondent.

CAUSE NO. 3:26-CV-221-PPS-AZ

OPINION AND ORDER

Jonathan Galen McPherson, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for cocaine dealing and possession under Case No. 20D03-1206-FA-30. Following a jury trial, on August 14, 2014, the Elkhart Superior Court sentenced him as a habitual offender to ninety-three years of incarceration (which was later lowered to an aggregate sentence of seventy-five years).

In a prior order, I found the one-year federal limitations period began to run when his conviction became final, and that his petition was untimely by seven years. ECF 8. I also found that he could not proceed based on his assertion of actual innocence because he did not identify any new evidence but instead relied on alleged discrepancies between a search warrant and the evidence presented at trial. *Id.* Nevertheless, I allowed McPherson an opportunity to address these concerns rather than immediately dismissing this case. *Id.* McPherson has now filed responses, so I will consider his arguments on the timeliness of his petition. ECF 12, ECF 13.

In these responses, McPherson reasserts that actual innocence excuses the untimely nature of his claims. A habeas petitioner can overcome untimeliness by establishing that the court's refusal to consider an untimely claim would result in a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 569 U.S. 383, 394 (2013). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006). In this context, the court may consider evidence only if it is reliable and was not presented at trial. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015). Actual innocence in the context of federal habeas law "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

To start, McPherson continues to argue that the prosecution's failure to prove the allegations in the search warrant at trial suggests his actual innocence. However, as I have previously explained, the absence of evidence in the trial record is not new evidence. He also argues that no reasonable juror would have found him guilty but for the trial court's misstatement of law, but a misstatement of law is not evidence. He provides a photograph that is labeled States' Exhibit 5 (ECF 12-1 at 2), which may be evidence but is not new, because, as the label suggests, it was presented at trial. He also submits a letter from post-conviction counsel in which counsel advises that

2

McPherson's concerns regarding the search warrant are unfounded (ECF 12-1 at 4). This letter does not suggest McPherson's innocence.

Next, McPherson submits an affidavit in which an individual named Anthony Berkshire, who McPherson identifies as the owner of the Cornerstone Ministries Boys and Girls Club, attests that Cornerstone Ministries Boys and Girls Club is not licensed or certified by Elkhart County or Indiana as a youth program center. ECF 12-1 at 3. This affidavit appears to qualify as new under *Gladney* because it does not appear to have been presented at trial given that it was signed in April 2016. To assess its probative value, I must consider the underlying facts of McPherson's crime, which are as follows as recounted by the Court of Appeals of Indiana:

> On May 16 and May 18, 2012, McPherson sold cocaine to different confidential informants working with the Elkhart Police Department. McPherson conducted both sales at his house, 412 Brady Street, in Elkhart. Directly across the street from McPherson's house, located at 411 Brady Street, is "Cornerstone Ministries Boy's and Girl's Club."

> The sign on the building reads:

> Cornerstone Ministries Boy's and Girl's Club
> By Sandy Ridge Mennonite Church
> Meet Every Wednesday 5:30 p.m.

> Detective Tim Freel, who used to live in the neighborhood, explained that the Boys and Girls Club "would have different groups of children come in there; typically, on a Wednesday night they had a program called Wednesday Night Club." He added that children often played basketball outside at the Club. In addition, Detective Andrew Whitmyer, who participated in the surveillance of McPherson's house on May 16, recalled seeing more children than usual at the Boys and Girls Club that day. He observed both "younger" and "older" kids playing and said that the activities appeared to be organized.

3

Elkhart police officers obtained and executed a search warrant for McPherson's house on May 29. McPherson and his girlfriend were home at the time. The officers found two digital scales with powdery residue and baggies with cut-off corners. The officers also found a loaded .40 caliber semiautomatic pistol inside a purse, a box of .40 caliber ammunition in a tote, and a loaded magazine for the pistol inside the pocket of a red sweatshirt—all in the master bedroom that McPherson used.

Detective Freel read McPherson his Miranda rights and then began to question him. McPherson admitted to "selling drugs from the house," "admitted to a firearm that was found inside the house," knew that his house was directly across the street from the Boys and Girls Club, and admitted that the $804 in cash found on his person was "proceeds from drug sales." Although no drugs were found during the search of McPherson's house, McPherson explained that he "was currently out of drugs and that he was planning to . . . re-up, or purchase more drugs, so that he could sell those drugs later on that afternoon." Finally, McPherson admitted that he had a prior felony conviction for dealing in cocaine and that as a result of that felony conviction, he could not possess a firearm.

The State charged McPherson with two counts of Class A felony dealing in cocaine (within 1000 feet of youth-program center) for the controlled buys on May 16 and 18, 2012; Class D felony maintaining a common nuisance for drug activities at his house on or between May 16 and 29; and Class B felony unlawful possession of a firearm by a SVF for the firearm found during the May 29 search of his house. The State alleged that McPherson was a SVF as a result of his 1997 conviction in Elkhart County for Class B felony dealing in cocaine. The State also alleged that McPherson was a habitual offender. For the two prior unrelated felony convictions, the State used McPherson's 1997 dealing-in-cocaine conviction as well as McPherson's 2008 conviction in Elkhart County for criminal recklessness resulting in serious bodily injury.

McPherson's jury trial was conducted in three phases. During the first phase, the jury found McPherson guilty of both dealing counts and maintaining a common nuisance. During the second phase, the jury found McPherson guilty of unlawful possession of a firearm by a SVF. During the third and final phase, the jury found that McPherson was a habitual offender.

*McPherson v. State*, 32 N.E.3d 284, at *1-2 (Ind. Ct. App. Apr. 28, 2015).

4

The charges of dealing cocaine within 1000 feet of a youth program center are the only charges that arguably relate to the Berkshire affidavit. Indiana criminal law defines "youth program center" as follows:

> (1) A building or structure that on a regular basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age.

> (2) The real property on which a building or structure described in subdivision (1) is located.

Ind. Code § 35-31.5-2-357.  Under this statute, the only relevant characteristic of the programs and services offered is whether they were provided on a regular basis to people less than eighteen years of age. *Whatley v. State*, 928 N.E.2d 202, 207 (Ind. 2010). Consequently, it does not appear that whether Cornerstone Ministries Boys and Girls Club had a license or certification is materially relevant to McPherson's convictions for dealing cocaine within 1000 feet of a youth program center. A lack of formal licensing or certification might arguably tend to suggest that the location was not used as a youth program center, but it seems unlikely that it would prevent a reasonable juror from crediting the detectives' testimony regarding their personal observations of recreational activities at that location. Because McPherson cannot establish with new evidence that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, I cannot excuse the untimely nature of his claim based on actual innocence.

In his response, McPherson also references his mental illness and his diligent efforts at seeking relief in State court. Although it is unclear how these references relate

to his assertion of actual innocence, he may be seeking to assert equitable tolling to excuse to the untimely nature of his habeas petition. "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Petitioners must show reasonable diligence in pursuing their rights throughout the federal limitations period and until the date the habeas petition is filed. *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). "It is the petitioner's burden to establish both of these points." *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014). "Although not a chimera—something that exists only in the imagination, equitable tolling is an extraordinary remedy that is rarely granted." *Carpenter*, 840 F.3d at 870.

"[M]ental illness can toll a statute of limitations, but only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Id.* at 872. While McPherson may suffer from mental illness, he does not suggest that it prevented him from understanding his legal rights and acting on them. To the contrary, he represents that he diligently pursued his rights by "consistently filing motions and petitions to the courts for the past 14 years" in his State criminal case. ECF 12 at 4. He has also submitted cogent filings, including a habeas petition in this case, despite his mental illness. *See e.g.,* ECF 1, ECF 6, ECF 12, ECF 13. Consequently, I cannot find that his mental illness prevented him from filing a timely habeas petition. McPherson identifies no other extraordinary circumstance, so he is not entitled to equitable tolling.

Having considered McPherson's timeliness arguments, I conclude that the petition is untimely and that McPherson has not asserted any valid excuse. Therefore, I will dismiss the habeas petition as untimely.

Pursuant to Section 2254 Habeas Corpus Rule 11, I must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability when a petition is dismissed on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, there is no basis for finding that jurists of reason would debate the correctness of this procedural ruling. Therefore, I deny McPherson a certificate of appealability.

For these reasons, the court:

(1) DISMISSES the petition (ECF 1) pursuant to Rule 4 of the Rules Governing Section 2254 Cases because the petition is untimely;

(2) DENIES Jonathan Galen McPherson a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

(3) DIRECTS the clerk to close this case.

SO ORDERED.

ENTERED:  June 29, 2026.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT